UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

John Wallace et al.

    v.                                  Civil No. 18-cv-747-LM
                                            Opinion No. 2019 DNH 198

Nautilus Insurance Company

**O R D E R**

John Wallace and Elizabeth Trase ("plaintiffs") brought a declaratory judgment action against Nautilus Insurance Company ("Nautilus"), seeking a declaration that Nautilus must indemnify McPhail Roofing, LLC ("McPhail") for damages that McPhail must pay plaintiffs for its defective workmanship in replacing the roofs on plaintiffs' homes. On July 23, 2019, the court granted in part and denied in part the parties' cross-motions for judgment on the stipulated record (the "July Order"). Plaintiffs and Nautilus move for reconsideration of the portion of the July Order denying their motions. In addition, plaintiffs move to supplement the stipulated record. The opposing party objects to each motion.

**BACKGROUND**

I. Factual Background

Because the court set forth a detailed background of this case in its order on the parties' motions for judgment on the

stipulated record ("motions for judgment"), it assumes a general level of familiarity with the facts and provides only a brief summary. Plaintiffs, who own adjoining houses on Quarry Road in Yarmouth, Maine, hired McPhail to replace the roofs on their houses. After McPhail completed its work, plaintiffs noticed several issues with their roofs, both aesthetically and otherwise. The plaintiffs withheld roughly a third of the agreed-upon contract price from the final payments due to McPhail under the contracts.

Plaintiffs met with Robert Fulmer, a roofing consultant and expert in the type of roof at issue. Fulmer conducted a detailed inspection of the roofs and found evidence of water leaking through both roofs during rainstorms. He opined that the only way to cure the installation defects was to remove and replace the roofs entirely. McPhail disagreed. Plaintiffs took Fulmer's advice and replaced both roofs, using another contractor.

Plaintiffs and McPhail were unable to resolve their dispute and proceeded to arbitration. Plaintiffs sought compensation for the damage caused by the leaking and for the replacement cost of the roofs. McPhail sought the remaining payment due under the parties' contracts. Nautilus, with whom McPhail held

a commercial liability policy (the "Policy"), defended McPhail in the proceeding.[1]

On June 29, 2017, the arbitrator issued an award (the "initial decision"), finding that McPhail had failed to properly install the roofs in accordance with the manufacturer's instructions and applicable building codes.  He further found that plaintiffs acted reasonably in removing and replacing the roofs.

The arbitrator awarded Wallace $140,053.50 and Trase $160,065.62 against McPhail.  At the parties' request, the arbitrator itemized the award of damages for each plaintiff.  For Wallace, the arbitrator awarded damages for the replacement roof without shingles, the shingles themselves, attic cleaning, attic reinsulation, and repainting.  For Trase, the arbitrator awarded damages for the replacement roof without shingles, the shingles themselves, and damage to her landscaping.

In addition, the parties stipulated that the arbitrator must award attorneys' fees and expenses to the substantially prevailing party.  Because the parties could not agree on the amounts, the arbitrator issued a supplemental award on March 29, 2018.  He awarded plaintiffs $176,898.95, broken down separately

---

[1] The Policy at issue in this case is a standard commercial general liability ("CGL") policy, the language of which has been subject to litigation in several jurisdictions for many years, as discussed further infra.

into awards for attorneys' fees, expert witness fees, and other expenses, plus additional compensation for pre- and post-judgment interest. On May 10, 2018, the District of Maine entered a judgment confirming the arbitration awards against McPhail. <u>Wallace & Trase v. Notinger as Ch. 7 Bankr. Trustee for McPhail Roofing, LLC</u>, No. 2:18-cv-00188, Dkt. No. 4 (D. Me. May 10, 2018).

Nautilus promptly paid plaintiffs on McPhail's behalf what it determined was covered under the Policy. Specifically, Nautilus paid Wallace $14,961.70, which represented the itemized damages in the arbitrator's award for attic cleaning and reinsulation, as well as repainting, and $25,910.24 in expert witness fees and expenses. Nautilus paid Trase $873.63, which represented the itemized damages to her landscaping, and $24,566.32 in expert witness fees and expenses. Nautilus refused to pay the remainder of the arbitrator's award, including the cost of replacing the roofs and the award of attorneys' fees.

Following McPhail's declaration of bankruptcy, plaintiffs obtained an assignment of McPhail's claims against Nautilus. <u>In re McPhail Roofing, LLC</u>, No. 17-11305-MAF, Dkt. No. 99 (Bankr. D.N.H. Aug. 22, 2018). Plaintiffs brought the instant suit, seeking a declaratory judgment that Nautilus is required under

4

the Policy to indemnify McPhail for the cost of replacing the roofs and the award of attorneys' fees.

II. The July Order

Under the Policy, Nautilus agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Doc. no. 14-3 at 11. The Policy applies only if the "'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" Id. Finally, the Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 24.

In the July Order, the court held that there had been property damage caused by an occurrence: the leaking due to the defectively constructed roofs. The court further held that although there was property damage from an occurrence, the Policy did not require Nautilus to indemnify McPhail for the cost of replacing the roofs. The court also held in the July Order that the Policy required Nautilus to indemnify McPhail for the attorneys' fees assessed in the arbitrator's decision.

5

**DISCUSSION**

Nautilus moves for reconsideration of the portion of the July Order holding that the Policy requires Nautilus to indemnify McPhail for the arbitrator's award of attorneys' fees. See doc. no. 26. Plaintiffs move to supplement the stipulated record to include new evidence. See doc. no. 29. Based on the additional evidence, plaintiffs move for reconsideration of the portion of the July Order holding that the Policy does not require Nautilus to indemnify McPhail for the cost of removing and replacing plaintiffs' roofs. See doc. no. 28.

I.  Motion to Supplement the Record

Plaintiffs seek to supplement the record to add four exhibits. The first is an August 5, 2019 "Supplemental Order on Request for Clarification on Basis of Remedy," issued by the arbitrator (the "Supplemental Order"). Doc. no. 29-1. In the Supplemental Order, the arbitrator clarifies the reasons for his award in the initial decision.

The second exhibit is a July 29, 2019 declaration of Brian Grady, the contractor who replaced McPhail's roofs on plaintiffs' houses. Doc. no. 29-2. Plaintiffs also seek to add to the record the two contracts Grady entered into with plaintiffs to repair their roofs (collectively, with the

Supplemental Order and Grady's declaration, the "supplemental evidence"). Doc. nos. 29-3 & 29-4.

Nautilus objects to the motion to supplement on several grounds. It argues that there is no legal basis to supplement the stipulated record after the court ruled on the parties' motions for judgment; that the arbitrator lacked jurisdiction to issue the Supplemental Order; that plaintiffs waived their rights to or are estopped from requesting a clarification of the arbitrator's award; and that the court should not consider Grady's affidavit or the contracts because Grady was never disclosed as a relevant witness in this case and has not been subject to examination by Nautilus.

The court agrees with Nautilus that supplementation of the stipulated record at this stage of the litigation is improper. The parties jointly requested that the court resolve their dispute based on "a stipulated record comprised of the Policy, the arbitrator's two decisions, the transcript from the arbitration, and the exhibits admitted into evidence at the arbitration." Doc. no. 10 at 1. The court granted that request, and the parties filed a stipulated record consisting of more than 3,500 pages.

Plaintiffs offer no authority for their contention that the court may consider additional evidence not included in the stipulated record after ruling on the parties' cross-motions.

7

Adding Grady's affidavit and the two contracts he entered into with plaintiffs to the stipulated record at this juncture would prejudice Nautilus, as it had no opportunity to examine Grady at the arbitration hearing.

In addition, plaintiffs offer no support for the theory that an arbitrator has jurisdiction to issue a further order relating to the parties' dispute after a district court confirms his award and reduces it to a judgment.[2] For these reasons, plaintiffs' motion to supplement the stipulated record is denied.

Although the court denies plaintiffs' motion to supplement, the court nonetheless explains below, for the sake of clarity, why consideration of the supplemental evidence would not change the outcome of the case.

## II. Motions for Reconsideration

Reconsideration of an order "is an extraordinary remedy which should be used sparingly." Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (internal quotation marks omitted). To succeed, a movant must "demonstrate that the order was based

---

[2] Even the arbitrator noted that this presented a "difficult" question. Doc. no. 29-1 at 2. And, none of the cases plaintiffs offer in support of their argument addresses the situation here: an arbitrator issuing an additional decision after a district court has confirmed his award and entered judgment. See doc. no. 34 at 4-6

8

on a manifest error of fact or law . . . ." LR 7.2(d). Reconsideration is not "a vehicle for a party to undo its own procedural failures" or a means to "advance arguments that could and should have been presented to the district court prior to" its decision. Iverson v. City of Boston, 452 F.3d 94, 104 (1st Cir. 2006). As such, the court will not grant reconsideration based on arguments that were not previously made or based on arguments that were rejected in the prior order. Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014).

### A. Plaintiffs' Motion for Reconsideration

Plaintiffs argued in their motion for judgment that the Policy covered the cost of replacing their roofs for two reasons. First, they argued that "[d]amages for roof replacement costs are directly linked to the property damage from the leaking because the roof must be removed to access and replace the water-damaged roof deck below." Doc. no. 16 at 10. Second, they argued that the "damages for roof replacement costs are 'causally linked' to the leaking because the existence of property damage caused by the leaking was a key reason that the Arbitrator awarded the full replacement cost as damages." Id. at 12. The court rejected both arguments.

Plaintiffs contend that the court either misapprehended certain facts or that the supplemental evidence provides a basis for reconsideration as to both conclusions.[3]

1. Rip-and-tear damages

Plaintiffs asserted in their motion for judgment that the roof decks—the plywood directly underneath the roofs—were damaged by the leaking from McPhail's roofs and needed to be repaired or replaced. They argued that because the roof decks are directly underneath the roofs, the roof decks could not be repaired or replaced without removing the roofs themselves. Plaintiffs contended that because the roof decks should be considered their "property" under the Policy, they are entitled

---

[3] Plaintiffs also suggest that the court should reconsider its July Order because the court rejected Nautilus's argument in its motion for judgment on the record that there was no occurrence under the Policy. Plaintiffs argue that because Nautilus bears the burden to show a lack of coverage in this case, the court should have entered judgment for plaintiffs on that basis alone. See doc. no. 28-1 at 5. Plaintiffs are mistaken. Nautilus argued in its motion for judgment that the cost of replacing plaintiffs' roofs was not the result of property damage caused by occurrence. In its supplemental memorandum, Nautilus specifically addressed whether the cost of replacing defective workmanship should be considered covered under a standard CGL policy whenever there is damage to a plaintiff's property. Thus, plaintiffs' argument that they are entitled to judgment because the court rejected Nautilus's primary argument raised in its motion for judgment is without merit.

10

to recover the cost of removing and replacing the roofs which was necessary to repair or replace the roof decks.

In the July Order, the court noted that no New Hampshire case has addressed the question of whether so-called "rip-and-tear" damages are covered under a standard CGL policy. The court noted that caselaw from other jurisdictions, however, supports the principle that such damages fall within the scope of coverage of such policies. Doc. no. 25 at 13-14 (citing cases).

The court, held, however, that even assuming rip-and-tear damages are covered under the Policy, plaintiffs did not incur such damages in this case because the stipulated record showed that the roof deck did not need to be repaired or replaced. During oral argument on the parties' cross-motions, Nautilus's counsel stated that although the roof decks on both houses were stained by the leaking from the defective roofs, they did not need to be repaired or replaced. Plaintiffs' counsel did not correct that statement.[4] But even more important, the stipulated

---

[4] Plaintiffs assert that Nautilus's counsel did not make such a statement regarding the roof decks during oral argument, and the court misinterpreted counsel's representation. That is simply not the case. The court questioned Nautilus's counsel about coverage for repairing damage to the roof decks and counsel represented, among other things, that "whatever damage occurred to it was not enough to keep it from being reused." Doc. no. 27 at 14:25-15:1. The fact that, as discussed infra, the stipulated record unambiguously supported Nautilus's

11

record unambiguously supports the contention that the roof decks did not need to be repaired or replaced. During the arbitration, several witnesses testified that the roof decks were reused when plaintiffs replaced McPhail's roofs. See id. at 14-15 (citing pages of the stipulated record).

In their motion for reconsideration, plaintiffs argue that the court's conclusion (i.e., that they did not incur rip-and-tear damages) is incorrect. They point to the "lump sum" contracts between plaintiffs and Grady, which are a part of the supplemental evidence.[5] The contracts provide that plaintiffs would pay a lump sum for the cost of the roof replacements. According to Grady's declaration, which is also part of the supplemental evidence, the "lump sum proposal included repairing or replacing whatever damage to the roof deck needed to be fixed when [Grady] removed the shingles." Doc. no. 29-2 at ¶ 4. Grady further states that he was able to reuse most of the plywood sheathing," but he "did repair or replace the plywood in certain places." Id. at ¶ 6. Plaintiffs contend that Grady's

---

counsel's representation to the court further confirms that the court did not misinterpret counsel's statement.

[5] There are two separate lump sum contracts, one of which is to replace Trase's roof (doc. no. 29-3) and the other to replace Wallace's roof (doc. no. 29-4). Only the contract to replace Wallace's roof is signed, however. See doc. no. 29-4 at 3. Because it does not change the court's analysis, the court assumes without deciding that Trase and Grady entered into the proposed contract in document no. 29-3.

12

declaration and the lump sum contracts show that they incurred rip-and-tear damages. The court disagrees.

As discussed above, plaintiffs argued in their motion for judgment that they were entitled to rip-and-tear damages because the roof had to be removed and replaced in order to repair the damage to their property—the roof deck. Doc. no. 16 at 11.

Grady's declaration and the lump sum contracts do not support that argument. Plaintiffs did not hire Grady to remove the roof in order to repair or replace their roof deck. Rather, as Grady plainly states and as the lump sum contracts show, plaintiffs hired Grady to replace their roofs and correct McPhail's faulty workmanship. The fact that the lump sum contracts include a provision that Grady would "[r]eplace plywood where necessary," does not transform the cost of replacing plaintiffs' roofs into rip-and-tear damages. See, e.g., Lee H. Shidlofsky, Deconstructing CGL Insurance Coverage Issues in Construction Cases, 9 No. 2 ACCLJ 2, 10 (Aug. 2015) (noting that rip-and-tear damages are "the costs to rip out non-defective work in order to repair covered 'property damage'" (emphasis added)). Moreover, although it appears Grady replaced plywood on the roof decks in "certain places," this does not establish the need to remove and replace the roofs.

Indeed, plaintiffs appear to acknowledge in their motion for reconsideration that they did not incur rip-and-tear

13

damages, stating that the price they paid to Grady "was to be the same regardless of the precise extent to which the plywood and other damaged materials had to be replaced." Doc. no. 28-1 at 9; see also id. at 10 n.2 (stating that plaintiffs' "damages would be the same regardless of the extent of repairs"). Thus, given that plaintiffs acknowledge that they would have incurred the same costs even if the roof deck did not need to be repaired or replaced, their contention that they incurred rip-and-tear damages is belied by their own statements. In short, the supplemental evidence does not support plaintiffs' contention that they incurred rip-and-tear damages.

### 2. Causal link

In their motion for judgment, plaintiffs argued the roof replacement costs were covered under the Policy because they were "causally linked" to the property damage resulting from the leaking roofs. In support, plaintiffs pointed to the arbitrator's initial decision, asserting that it stated that the property damage was an "important factor" in awarding the replacement cost of the roof as damages. Doc. no. 16 at 12. Thus, plaintiffs argued that because the arbitrator premised his award of the cost of the roof replacement on the fact that plaintiffs incurred property damage, the costs of the roof replacement should be considered sums that McPhail became

14

"legally obligated to pay as damages because of . . . property damage" under the Policy. Doc. no. 14-3 at 11

In the July Order, the court noted that the arbitrator's decision does not state that the damage to plaintiffs' property was the basis for, or even a factor in, the arbitrator's determination that plaintiffs are entitled to recover the cost of the roof replacements from McPhail. The court rejected plaintiffs' arguments as to the "causal link" based on caselaw from several jurisdictions interpreting the language of a standard CGL policy.

As discussed above, after the court's July Order, the arbitrator issued a Supplemental Order at plaintiffs' request, which states, in relevant part:

> In short, a critical fact in my finding that replacement of the roofs was a reasonable remedy for the Homeowners to employ was that water had intruded through the roof at each house, which intrusion caused damage to the interior of each house. Had there been no showing of water intrusion into each house, full replacement of the roofs would not have been justified under the circumstances.

Doc. no. 29-1 at 2. Plaintiffs contend that the arbitrator's clarification of this point shows that the costs of replacing their roofs are covered under the Policy, requiring Nautilus to indemnify McPhail for those costs.

The arbitrator decided that McPhail's work did not meet its obligations under the contracts with plaintiffs because McPhail

15

did not properly construct the roofs on plaintiffs' houses. He also found that McPhail's defective workmanship allowed water to intrude into the houses, causing additional damage to plaintiffs' property. As a result, the arbitrator found that McPhail was liable to plaintiffs for damages to cover the costs of its defective work and the resulting property damage. The damages awarded to plaintiffs by the arbitrator covered the costs of replacing the defectively installed roofs, along with other costs of repairing their damaged property.

The issue presented in this case is different. The court is not tasked with determining McPhail's liability. Rather, the court must determine the extent to which the Policy covers McPhail's liability to plaintiffs, as determined by the arbitrator. The Policy indemnifies McPhail for damages incurred because of property damage caused by an occurrence. It does not indemnify McPhail for the cost of replacing or repairing its defective workmanship.

As the court noted in the July Order, plaintiffs have failed to point to any caselaw that supports a holding that the cost of repairing a contractor's defective work is covered under a standard CGL policy absent damage to the defective work itself or in the context of rip-and-tear damages. See doc. no. 25 at 19-20. Plaintiffs similarly do not offer any such caselaw in their motion for reconsideration. The arbitrator's Supplemental

Order does not change that deficiency in plaintiffs' argument. For these reasons, plaintiffs' motion for reconsideration is denied.

    B.    <u>Nautilus's Motion for Reconsideration</u>

As discussed <u>supra</u>, during the arbitration hearing, the parties stipulated "that the substantially prevailing party in this action must be awarded attorney's fees in an amount to be determined by the arbitrator, together with expenses." Doc. no. 14-2 at 3. After the arbitrator ruled in plaintiffs' favor as to McPhail's liability, plaintiffs submitted legal bills and documentation to the arbitrator to support their request for fees and expenses. McPhail objected.

The arbitrator awarded plaintiffs $176,898.85 in attorneys' fees and expenses, breaking down the award as follows: $127,933 in attorneys' fees; $44,328.46 in expert witness expenses; and $4,637.49 in other expenses. Nautilus paid plaintiffs amounts awarded for expert witness and other expenses, as well as pre- and post-judgment interest. It asserted, however, that the award of attorneys' fees was not covered by the Policy and refused to pay that amount on McPhail's behalf. Plaintiffs sought in this case a declaration that the arbitrator's attorneys' fees award is covered by the Policy.

In its motion for judgment, Nautilus, which bears the burden of showing that coverage does not exist, referred to the Policy's "Supplementary Payments" provision, which provides that Nautilus is obligated to pay all "costs taxed against the insured" in any suit that Nautilus defends, as well as any pre- and post-judgment interest. The Supplementary Payments provision, however, does not mention attorneys' fees. Nautilus argued that, therefore, it is not obligated to indemnify McPhail for those fees.

In the July Order, the court held that Nautilus was required under the Policy to indemnify McPhail for the arbitrator's attorneys' fees award. The court held that although the Policy's "Supplementary Payments" provision did not mention attorneys' fees, the phrase "costs taxed against the insured" was ambiguous. The court construed the ambiguity against Nautilus, as required under New Hampshire law, and held that the phrase includes attorneys' fees.

In moving for reconsideration of that portion of the July Order, Nautilus makes several arguments: (1) "costs" is a defined term under Maine law and does not include attorneys' fees; (2) the cases holding that the phrase "costs taxed against the insured" from various jurisdiction which the court cited in the July Order are all distinguishable; and (3) the court committed a manifest error of law when it considered a

subsequent change in the language of a standard CGL policy. Plaintiffs dispute each argument.

Nautilus's litigation strategy on this question is too little, too late. In its motion for judgment, Nautilus devoted approximately one page to the issue of attorneys' fees and cited no caselaw. With regard to the Supplementary Payments provision, Nautilus stated:

> The supplementary payments provision of the policy does not provide coverage for attorneys' fees. Given that the policy does provide for payments of costs, pre-judgment interest, and post-judgment interest, the omission of a similar provision for attorneys' fees demonstrates that attorneys' fees are not compensable as a supplementary payment.

Despite plaintiffs responding with ample caselaw supporting their argument that the phrase "costs taxed against the insured" is ambiguous, Nautilus did not file a response.

Nautilus's motion for reconsideration raises arguments that could and should have been raised in its motion for judgment. Thus, Nautilus is not entitled to reconsideration of the July Order for that reason alone, and the court denies the motion on that basis.[6]

---

[6] Regardless, had Nautilus elected to raise these arguments in its motion for judgment, they would not have carried the day. Each lacks merit for the reasons stated in plaintiffs' objection.

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion to supplement the record (doc. no. 29) and motion for reconsideration (doc. no. 28), and Nautilus's motion for reconsideration (doc. no. 26) are denied.

In the July Order, the court held in abeyance its ruling as to whether plaintiffs are entitled to costs and reasonable attorneys' fees incurred in bringing this suit under RSA 491:22-b. The parties shall notify the court as to whether they have reached an agreement as to costs and fees within 21 days of the date of this order. If the parties cannot reach an agreement, plaintiffs shall file a brief in support of their request within 14 days of the day notification is provided to the court. Nautilus shall then have 14 days to file a response.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

November 22, 2019

cc: Counsel of Record.